```
1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10                                              CASE NO. 2:12−cv−0134−MJP
     TRIDENT SEAFOODS
11   CORPORATION, a Washington                  ORDER ON FISHERMEN'S FINEST,
     Corporation, et al.,                       INC.'S MOTION TO INTERVENE
12
                      Plaintiffs,
13
            v.
14
     JOHN E. BRYSON, et al.,
15
                      Defendants.
16
17
       This matter comes before the Court on Fishermen's Finest, Inc., North Pacific Fishing,
18
   Inc., and U.S. Fishing, L.L.C's (collectively referred to as "Catcher-Processors") motion to
19
   intervene. (Dkt. No. 18.) Having reviewed the motion, Plaintiff Trident Seafood Corporation's
20
   response (Dkt. No. 22), the reply (Dkt. No. 23), and all related papers, the Court GRANTS in
21
   part and DENIES in part the motion.
22
23
24
```

## Background

Defendant National Marine Fisheries Service ("Fisheries Service") regulates rockfish fisheries located on the Alaskan coast. Each rockfish fishery has three components: (1) Processors (i.e. Plaintiffs), (2) catcher vessels that catch and deliver fish to Processors for processing, and (3) Catcher-Processor vessels that catch fish and process them on-board while at sea (i.e. Intervenors). (Dkt. No. 22 at 2.) In order to manage the different fisheries, the Fisheries Service creates management plans to regulate the catching and conservation of rockfish.

Plaintiffs-Processors are owners of rockfish processing facilities located on the Gulf of Alaska in Kodiak, Alaska. The proposed intervenors, the Catcher-Processors, are a collective of offshore vessels that catch and process rockfish at sea in the Gulf of Alaska fishery. The Processors brought this suit to challenge the current fishery management plan for the Gulf of Alaska titled Amendment 88. (Dkt. No. 14 at ¶ 1.)

Defendants promulgated Amendment 88 to replace the previous management plan for the fishery, the Central Gulf of Alaska Rockfish Pilot Program ("Pilot Program"). (Dkt. No. 14 at ¶ 11.) The Pilot Program, which began in 2006, created cooperatives between Catchers and Processors, in which the Processors and Catchers shared the rents generated from the rockfish fishery (i.e., the difference between total revenues from the fishery and the total cost of the fishery). (Id. at ¶ 11-14, 32.) The Pilot Program required Catchers to contract with Processors in order to receive an individual catching quota. (Id. at ¶ 32.)

In contrast, Amendment 88 allocates individual catching quotas to Catchers and Catcher-Processors. (Dkt. No. 14 at ¶ 38.) Under this plan, Catchers can deliver their harvest to any Processor. (Id.) Amendment 88 creates a large surplus of processing capacity relative to catching capacity because any one of the Processors in Kodiak has the physical capacity to process more

| | |
|---|---|
| 1 | than all of the available rockfish in the fishery. (Id. at ¶ 38.) Under this plan, Processors must bid |
| 2 | for rockfish deliveries. (Id.) |
| 3 | The North Pacific Fishery Management Council ("Council") chose to replace the Pilot |
| 4 | Program, which expired on December 31, 2011, with Amendment 88 based on an opinion by the |
| 5 | General Counsel for Defendant National Oceanic Atmospheric Administration ("NOAA"). (Dkt. |
| 6 | No. 14 at ¶ 35.) Defendant NOAA is an agency of the United States Department of Commerce |
| 7 | with supervisory responsibility over the Fisheries Service. (Id. at ¶ 16.) The General Counsel's |
| 8 | opinion advised that any new rockfish management program would need to be developed under |
| 9 | the general authority of the Magnuson-Stevens Fishery Conservation and Management Act |
| 10 | ("Magnuson-Stevens Act"). (Id. at ¶ 36.) Further, the General Counsel advised that (1) the |
| 11 | Magnuson-Stevens Act precluded a fishery management plan from limiting the number of |
| 12 | processing sites unless justified by a conservation and management objective, and (2) the terms |
| 13 | "fishing" and "fishery" in the Magnuson-Stevens Act did not include Processors. (Id.) Based on |
| 14 | this advice, the Council did not consider or analyze whether extension of the Pilot Program was |
| 15 | feasible. (Id.) |
| 16 | The Processors contend Amendment 88 and the rule implementing the regulation violate |
| 17 | the Magnuson-Stevens Act, the National Environmental Policy Act ("NEPA"), and the |
| 18 | Administrative Procedure Act ("APA"). (Dkt. No. 14 at ¶¶ 1-3.) The Processors claim |
| 19 | Defendants violated the Magnuson-Stevens Act by approving and implementing Amendment 88 |
| 20 | without (1) including on-shore processing as a definition under the terms "fishing" and "fishery," |
| 21 | and (2) finding that the Magnuson-Stevens Act authorizes continuation of the Pilot Program. (Id. |
| 22 | at ¶¶ 49-50.) |

Additionally, the Processors claim Defendants violated NEPA by failing to consider reasonable alternatives to Amendment 88, including the Pilot Program, to prepare an environmental impact statement, and to consider and analyze the effects of all reasonable alternatives on the natural environment and the attendant socio-economic effects. (Id. at ¶¶ 56-59.) The Processors allege such actions harm them by allocating 100% of the rents to vessel owners instead of allowing the Processors a share in those rents. (Id. at ¶ 4.) The Processors ask the Court to "vacate the Final Rule implementing Amendment 88" and to reinstate the Pilot Program pending reconsideration by the Council and approval by Defendants of a new rule. (Id. at ¶¶ (c)-(e).)

The Catcher-Processors seek to intervene and oppose the Processors' request for reinstatement of the Pilot Program. (Dkt. No. 18 at 1.) The Catcher-Processors allege that under Amendment 88 their quota share of rockfish increased almost 9% from their quota share under the Pilot Program. (Id.) The Catcher-Processors argue they will lose their 9% increase in quota shares if the Court grants the Processors the relief they request. (Id. at 3.) The Processors oppose the Catcher-Processors' motion to intervene and ask the Court to limit the Catcher-Processors participation in the action, if any, to the remedy stage. (Dkt. No. 22 at 11.)

**Analysis**

I. Motion to Intervene as a Matter of Right

When analyzing a motion to intervene as a matter of right under Federal Rule 24(a)(2), a court applies a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's

interest must be inadequately represented by the parties to the action. Wilderness Soc. v. U.S. Forest Serv., 630 F.3d 1173, 1177 (9th Cir. 2011). In evaluating whether Rule 24(a)(2)'s requirements are met, courts normally follow "practical and equitable considerations" and construe the Rule "broadly in favor of proposed interveners." Id. at 1179. Here, the Processors challenge the Catcher-Processors' intervention of right on all grounds except timeliness. (Dkt. No. 22 at 2.)

    a. <u>Significantly Protectable Interest</u>

The Court grants the Catcher-Processors' motion to intervene as a matter of right to the remedy stage only.

Federal Rule 24(a) requires that an applicant for intervention possess an interest relating to the property or transaction that is the subject matter of the litigation. Fed. R. Civ. P. 24(a). An applicant for intervention must show its interest is protectable under some law, and there is a relationship between the legally protected interest and the claims at issue in the case. Wilderness Soc., 630 F.3d at 1179. The Ninth Circuit does not require an applicant to show a specific legal or equitable interest. Id. Rather, courts view the "interest" test as a practical guide to disposing of lawsuits by involving as many concerned persons as is compatible with efficiency and due process. Id. A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." Id. at 1181. An intervening party's interest in the remedy a plaintiff seeks can be sufficient to establish a protectable interest in the litigation. U.S. v. City of Los Angeles, Cal., 288 F.3d 391, 399-400 (9th Cir. 2002). An intervention of right under Rule 24(a) may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of proceedings. Fed. R. Civ. P. 24 hist. n. (1966).

The Catcher-Processors do not possess a significantly protectable interest in the merits of this litigation because the Catcher-Processors' interest in maintaining its current harvest quota share is not related to the Processors' claims. The Magnuson-Stevens Act protects commercial fishing interests in general. (Dkt. No. 22 at 4 n.1); 16 U.S.C. § 1801. The Processors challenge the legal status of Processors under that Act. (Dkt. No. 22 at 4 n.1.) In contrast, the Catcher-Processors are not concerned with the legal status of Processors; rather, their interest lies in whether Defendants reinstate the Pilot Program if the Court finds in favor of the Processors. Therefore, the Court denies the Catcher-Processors' motion to intervene in the merits of this case because the Catcher-Processors' interest does not relate to the Processors' claims.

As a corollary, the Catcher-Processors possess a significantly protectable interest in the remedy the Processors seek because they will suffer a practical impairment of their interests if the Court grants relief to the Processors. The Processors argue the Catcher-Processors do not have an interest in the remedy stage of litigation because "the only issue relating to Amendment 88 is the legal status of the Processors, and any reinstatement of the RPP [Rockfish Pilot Program] or remand to Defendants for reconsideration would only relate to that issue." (Dkt. No. 22. at 11.) The Processors' Complaint, however, asks the Court to reinstate the Pilot Program completely, not just the portions applicable to Processors. (Dkt. No. 14 at ¶¶ (c)-(e).) Reinstatement of the Pilot Program could harm the Catcher-Processors' harvest quota share by a 9% decrease. (Dkt. No. 23 at 4.) Therefore, the Court grants the Catcher-Processors' motion to intervene in the remedy stage because they possess a significantly protectable interest in the remedy stage of this action.

b. Impairment of Ability to Protect Interest

Relief in favor of the Processors' would hamper the Catcher-Processors' ability to protect their interests. An intervention applicant must show that it is situated such that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest. Wilderness Soc., 630 F.3d at 1177. The Catcher-Processors would suffer financial harm if the Court grants relief to the Processors in the form of reinstating the Pilot Program. (Dkt. No. 23 at 3-4.) Therefore, the Court grants the Catcher-Processors' motion to intervene in the remedy phase.

c. Adequacy of Current Representation

The Court grants the Catcher-Processors' motion to intervene as a matter of right in the remedy stage because Defendants may not adequately represent their interests.

Applicants for intervention bear a minimal burden of showing inadequate representation. Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003). Applicants satisfy this requirement if they demonstrate that representation of their interests "may be" inadequate. Id. In determining the adequacy of representation, a court considers three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. Id. A presumption of adequacy arises when the government is acting on behalf of a constituency it represents. City of Los Angeles, 288 F.3d at 401. The presumption is not controlling, however, where the applicant's interests are narrower than the government's interests and therefore may not be adequately represented. Sw. Ctr. for Biological Diversity v. Berg, 268 F.3d 810, 823-24 (9th Cir. 2001); Trbovich v. United Mine Workers of America, 404 U.S. 528, 539 (1972) (intervention is appropriate where the government has the duty to serve two

distinct interests, which are related, but not identical because the government's pursuit of both interests does not always dictate precisely the same approach to the conduct of the litigation).

Here, Defendants may not adequately represent the Catcher-Processors' interests in the remedy stage of litigation because their interests are narrower than Defendants. The Catcher-Processors' interest is to retain their allocation of quota shares. (Dkt. No. 23 at 5). Defendants' sole goal in this litigation is not to protect the quota percentages enjoyed by the Catcher-Processors; rather, they must balance a number of competing economic, environmental, scientific, and conservation interests in determining whether to reinstate the Pilot Program, or a similar program, including the interests of the Catcher-Processors, the Processors, and the Catchers. (Dkt. No. 18 at 8); Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1259 (11th Cir. 2002) (finding a federal defendant's interest in the management of a resource is not an identical interest compared to those of an entity with economic interests in the use of that resource). Because the parties' interests are different, it is unlikely the government will make all of the Catcher-Processors' arguments, or be willing to do so. Therefore, the Court grants the Catcher-Processors' motion to intervene in the remedy stage because Defendants may not adequately represent their narrow interests.

**Conclusion**

The Court GRANTS the Catcher-Processors' motion to intervene as a matter of right in the remedy stage because the Catcher-Processors have a protectable interest in maintaining their current harvest quota share, the litigation potentially impairs that interest, and Defendants will not adequately represent the Catcher-Processors' interests during the remedy phase. The Court DENIES the Catcher-Processors' motion to intervene in the merits because their interest in

maintaining their quota shares is not related to the Processors' claims which concern the legal status of Processors only.

The clerk is ordered to provide copies of this order to all counsel.

Dated this <u>9th</u> day of May, 2012.

_[signature]_
Marsha J. Pechman
United States District Judge

ORDER ON FISHERMEN'S FINEST, INC.'S
MOTION TO INTERVENE- 9